IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 9 CR 513-2 |
| ) | |
| v. ) | Hon. Charles R. Norgle |
| ) | |
| HECTOR ROLANDO MORALES, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the Court is Defendant Hector Rolando Morales's ("Defendant") motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. For the following reasons, the motion is denied.

**I. BACKGROUND**

On June 16, 2009, a grand jury indicted Defendant and his son Hector Rolando Morales Caal. As to Defendant, the indictment charged him with nine counts of mail fraud, in violation of 18 U.S.C. § 1341. On June 17, 2009, a bench warrant was issued. Nearly nine months later, on March 8, 2010, Defendant was arrested in Redwood City, California. On February 14, 2012, Defendant proceeded to a jury trial. On February 27, 2012, the jury found Defendant guilty on all counts.

During the course of the trial, the government presented the jury with evidence from over thirty witnesses, including testimony from victims of the fraud, and approximately 200 exhibits. The government presented the following evidence at trial: that Defendant devised a scheme to obtain victims' bank account information under false and fraudulent pretenses, offering an

alleged bad-check collection service; that Defendant was in charge of recruiting salespeople to offer the alleged bad-check collection service; that the victims were small business owners located primarily in southern California and Texas, and mainly of Hispanic origin; that Defendant, through his corporation Intelligent Payment Services, Inc. ("IPS"), located at 1580 S. Milwaukee Avenue, Suite 507, Libertyville, Illinois, instructed a series of financial intermediaries to withdraw funds from victims' bank accounts; that as the scheme progressed, Defendant forged fictitious documents between IPS and victims purporting to be lease agreements; that Defendant personally received over $430,000 in proceeds from the fraudulent scheme through checks and wire transfers made payable to him and deposited into accounts controlled by him; and that Defendant benefitted from an additional $55,000 in fraudulent proceeds used to pay his personal credit cards and to make payments on cars that he leased.

Defendant now moves under Rule 33 for a new trial as to his nine convictions for mail fraud. The motion is fully briefed and before the Court.

## II. DISCUSSION

A.  **Standard of Decision**

Rule 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A Rule 33 motion, however, is disfavored and is properly granted only in "the most extreme cases." United States v. Linwood, 142 F.3d 418, 422 (7th Cir. 1998) (internal quotations marks and citation omitted). To obtain a new trial grounded on newly discovered evidence, Defendant must show that the evidence "(1) was discovered after trial; (2) could not have been discovered sooner with due diligence; (3) was material in the sense that it bore directly on guilt or innocence and not simply impeaching or

cumulative; and (4) if presented at a new trial would probably result in acquittal." United States v. Palivos, 486 F.3d 250, 255 (7th Cir. 2007) (citing United States v. Hodges, 315 F.3d 794, 801 (7th Cir. 2003)).

"For a *Brady* violation to exist, entitling a defendant to a new trial, he must establish (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defendant; and (3) that it is material to an issue at trial." Id. "Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. (internal quotation marks and citations omitted). In other words, Defendant must show that "the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" Kyles v. Whitley, 514 U.S. 419, 434 (1995) (quoting United States v. Bagley, 473 U.S. 667, 678 (1985)); see also Jardine v. Dittmann, 658 F.3d 772, 776-77 (7th Cir. 2011) (per curiam).

B.  **Motion for a New Trial**

Defendant argues that he is entitled to a new trial because, three weeks after the jury verdict, he obtained "newly discovered evidence" from the government. According to Defendant, the government's failure to disclose emails written by Secret Service Agent Jason Kane ("Kane") (who testified at trial), before the conclusion of the trial, constitutes a violation of Brady v. Maryland, 373 U.S. 83 (1963).

In Brady, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87; see also United States v. Wright, 651 F.3d 764, 773 (7th Cir. 2011). Defendant contends that

3

two emails, dated April 15, 2009, and June 9, 2009, from Kane to Assistant United States Attorney Matthew Burke, are Brady material. The April 15 email states, "Just another nugget of info. When we entered to do the search warrant, inside Hector Morales Seniors [sic] office the lap top was on a small desk beside his. According to the Daughter, she was entering in items in the computer. Here is a picture of what was on the computer at that time." Def. Hector Rolando Morales' Post-Trial Mot. for a New Trial Ex. A [hereinafter Def.'s Post-Trial Mot.]. The June 9 email states, "Matt, got the message, I will pick it [(subpoena for Defendant's daughter)] up and I will serve it and arrest everybody in the house because as you know somebody is going to jail and no more than ever somebody maybe a pet will be tazered!" Id.

The government concedes that these emails were in its possession and, through inadvertence, were not produced to the defense prior to trial. Defendant argues that he is entitled to a new trial because the government had an obligation to timely disclose the emails as exculpatory and/or impeaching information.

### 1. *Whether the Government Suppressed Impeaching Evidence Material to the Case*

Defendant argues that the April 15 and June 9 emails constitute impeachment evidence as the emails could have been used to show that Kane was subjectively biased in favor of the prosecution. Defendant contends that it is likely that the jury found Kane, who is currently assigned to help protect First Lady Michelle Obama, to be a very credible and relevant witness. The issue here is whether the emails are material to the case.

The government argues that the April 15 email is not material because it is inadmissible. "[O]nly admissible evidence can be material, for only admissible evidence could possibly lead to a different verdict." United States v. Salem, 578 F.3d 682, 686 (7th Cir. 2009) (citing United

two emails, dated April 15, 2009, and June 9, 2009, from Kane to Assistant United States Attorney Matthew Burke, are Brady material. The April 15 email states, "Just another nugget of info. When we entered to do the search warrant, inside Hector Morales Seniors [sic] office the lap top was on a small desk beside his. According to the Daughter, she was entering in items in the computer. Here is a picture of what was on the computer at that time." Def. Hector Rolando Morales' Post-Trial Mot. for a New Trial Ex. A [hereinafter Def.'s Post-Trial Mot.]. The June 9 email states, "Matt, got the message, I will pick it [(subpoena for Defendant's daughter)] up and I will serve it and arrest everybody in the house because as you know somebody is going to jail and no more than ever somebody maybe a pet will be tazered!" Id.

The government concedes that these emails were in its possession and, through inadvertence, were not produced to the defense prior to trial. Defendant argues that he is entitled to a new trial because the government had an obligation to timely disclose the emails as exculpatory and/or impeaching information.

### 1. *Whether the Government Suppressed Impeaching Evidence Material to the Case*

Defendant argues that the April 15 and June 9 emails constitute impeachment evidence as the emails could have been used to show that Kane was subjectively biased in favor of the prosecution. Defendant contends that it is likely that the jury found Kane, who is currently assigned to help protect First Lady Michelle Obama, to be a very credible and relevant witness. The issue here is whether the emails are material to the case.

The government argues that the April 15 email is not material because it is inadmissible. "[O]nly admissible evidence can be material, for only admissible evidence could possibly lead to a different verdict." United States v. Salem, 578 F.3d 682, 686 (7th Cir. 2009) (citing United

States v. Silva, 71 F.3d 667, 670 (7th Cir. 1995)); see also Jardine, 658 F.3d at 776-77 ("[I]nadmissible evidence is immaterial . . . ."). "[E]vidence of a witness's bias or motive to lie is generally admissible for impeachment, and that bias is a particularly appropriate topic for cross-examination." Marcus & Millichap Inv. Servs. of Chi., Inc. v. Sekulovski, 639 F.3d 301, 307 (7th Cir. 2011) (citations omitted). Proffered evidence of bias, however, "is subject to both the Federal Rules of Evidence and the discretion of the trial court." Id. (citing United States v. Frankenthal, 582 F.2d 1102, 1106-07 (7th Cir. 1978)). Here, the April 15 email does not refer to something Kane or any other agent witnessed first-hand. Rather, it addresses something law enforcement heard after the fact during an interview with Defendant's daughter. Thus, this email is inadmissible as impeachment evidence, see F. R. Evid. 602, 802; and, therefore is not material to the case.

With respect to the June 9 email, the government contends that it reveals no meaningful bias because "it is clear from any objective reading of the email that it is a poor attempt at humor." Gov't's Resp. in Opp'n to Def.'s Mot. for a New Trial 12. The government characterizes Kane's comments that he would "arrest everybody in the house" and that "somebody maybe a pet will be tazered!," Def.'s Post-Trial Mot. Ex. A, as absurd and not a literal reflection of his intent. Further, the government argues that even if the email could be considered impeachment evidence, Kane's testimony was corroborated extensively and was not susceptible to fabrication given that his testimony consisted almost entirely of identifying various documents recovered by law enforcement agents during the search.

"Undisclosed impeachment evidence would not produce a different result if the testimony of the witness against whom it is offered was strongly corroborated by other evidence." United

States v. Wilson, 481 F.3d 475, 481 (7th Cir. 2007) (citations omitted). Here, Kane was only one of over 30 witnesses who testified during the government's case-in-chief, which included testimonial evidence from victims of the fraud, and approximately 200 exhibits. One of the largest categories of documents found during the search was "merchant information sheets." These documents listed the name, bank account number, bank routing code, and other sensitive information from victims of the fraud. This documentary evidence was introduced almost entirely through victims hailing from Texas and California. The victims testified that, in 2003 or 2004, someone claiming to be a salesperson came to the victim's business, offered a "bad check collection service," and asked the victim to fill out a "merchant information sheet" and provide a voided check from their bank account. The victims identified the documents—that law enforcement later found in the search—as the documents collected by the alleged salesperson, and confirmed that the documents contained their personal information and bank account numbers.

The government's evidence also included documents bearing Defendant's distinctive handwriting. This evidence was offered through: IPS receptionist Carmen Donaire ("Donaire") (who identified the handwriting); Special Agent Kristopher Guilfoyle (who took handwriting samples from Defendant), and through Patricia Gonzalez (who translated the Spanish documents into English). This category of evidence included, *inter alia*, a forged and fictitious document purporting to be a lease agreement between IPS and victim Walter Corea—in Defendant's distinctive handwriting and faxed from Defendant's office. Additionally, the government presented evidence of telephone and fax records tying Defendant's home and Defendant's private office to the fraud, extensive financial records showing that Defendant benefitted from the fraud,

and bank records showing that Defendant deposited fraudulent checks the day after the search.

In light of the substantial amount of evidence that corroborated Kane's testimony, as well as the overwhelming evidence of Defendant's guilt separate and apart from that testimony, the email does not create a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. As such, Defendant fails to show a Brady violation.

### 2. *Whether the Government Suppressed Exculpatory Evidence Material to the Case*

Defendant also contends that the April 15 email constitutes Brady material because, throughout the trial, the government emphasized that it had caught Defendant "red-handed" participating in the fraud. The government advances three reasons why the failure to disclose was not a Brady violation. First, the government argues that although it did not produce the April 2009 email prior to trial, it produced a report written by Kane that contained substantially the same information, i.e., that Defendant's daughter would enter information into the computer. Specifically, the September 2004 report states:

> Paulina Morales [Defendant's daughter] advised him [Special Agent Alan Tiffin] she worked for her father Hector Morales Sr on a part time basis. She explained her brother Hector Morales Jr would giver her new accounts which she would enter into the computer. Ms. Morales stated IPS has no Illinois clients. Ms. Morales when further questioned about the computers refused to make any further statements.

Gov't's Resp. in Opp'n to Def.'s Post-Trial Mot. for New Trial 4 (citing R. 82-1, at 26). Defendant argues that the two reports do not reveal the same substance because the September 2004 report refers to what Defendant's daughter stated that she did generally, whereas the April 2009 email revealed what Defendant's daughter reported that she was doing on a specific instance. According to Defendant, this distinction is particularly important because of the

7

government's emphasis at trial on what was going on at the time of the search, and its claim that it had caught Defendant "red-handed." The Court rejects this argument. Defendant's theory at trial was that the fraud had been perpetrated by someone other than Defendant. The alleged exculpatory evidence—that Defendant's daughter entered items in the computer—was merely cumulative of other evidence conveyed to Defendant, prior to trial, in the September 2004 report. See United States v. Fallon, 348 F.3d 248, 252 (7th Cir. 2003) (finding alleged Brady evidence merely cumulative of other evidence and therefore not material).

In any event, the government contends that the April 15, 2009 email is not material because it is inadmissible. As discussed above, the Court agrees. Indeed, the government points out that no member of law enforcement witnessed first hand what Defendant's daughter claimed about the computer and therefore no member of law enforcement could have testified to the issue. Notwithstanding the inadmissability of the email, Defendant argues that, if "[a]rmed with this evidence," he could have called his daughter to testify at trial. Def.'s Post-Trial Mot. 8. This argument is without merit. Defendant could have called his daughter to testify based upon the information contained in the September 2004 report, which revealed substantially the same information.

Second, the government argues that it could not have suppressed evidence of which Defendant was already aware. See United States v. Mahalick, 498 F.3d 475, 478 (7th Cir. 2007). "*Brady* requires disclosure only of exculpatory material known to the government *but not to the defendant.*" Id. (citations omitted). Here, when law enforcement agents executed a search warrant at Defendant's office, the only persons present in the suite were receptionist Donaire, Defendant, and Defendant's daughter. Before law enforcement officers entered the suite,

8

Defendant and his daughter were both inside his private office. The government argues that because Defendant knows firsthand what happened on the morning of the search, he would have been aware of any exculpatory evidence. See United States v. Phillips, 596 F.3d 414, 419 (7th Cir. 2010). Defendant, however, responds that there is no support that he necessarily knew that his daughter was entering fraudulent information on the laptop. Defendant submits that it is just as plausible that he thought his daughter was doing her college homework. This argument, however, is unavailing in light of the overwhelming evidence of Defendant's guilt.

Finally, the government argues that the emails are not material as they do not create the reasonable probability of a different result. "[N]ot all suppressed evidence that has some tendency to exculpate or impeach is material under *Brady*, and relief may be granted only if introducing the evidence would have cast the whole case in such a different light as to undermine confidence in the verdict." Jardine, 658 F.3d at 776-77 (internal quotation marks and citation omitted). Here, the government presented overwhelming evidence of Defendant's guilt.

The government's extensive evidence included: a forged and fictitious document purporting to be a lease agreement between IPS and victim Walter Corea, which was in Defendant's distinctive handwriting and faxed from his private office; documents founds in Defendant's private office—where he was present on the morning of July 27, 2004, when law enforcement agents executed the search warrant—that contained personal information of numerous victims of the fraud; evidence collectively showing that IPS performed no lawful business; documents in Defendant's handwriting showing that he devised the fraudulent scheme; evidence that Defendant was intimately involved with IPS's bank accounts and finances and was in charge of recruiting salespeople to offer the alleged bad-check collection service; testimony

from Donaire that Defendant was actively involved in IPS's operations, and that she told Defendant on two separate occasions that she was receiving angry phone calls from people complaining about money being taken out of their accounts without their permission; telephone and fax records showing multiple calls and fax transmissions between Defendant's private office and his residence, and several of the financial intermediaries used to withdraw money from victims' accounts; documents showing that Defendant personally received over $430,000 in proceeds from the fraudulent scheme through checks and wire transfers made payable to him and deposited into accounts controlled by him; documents showing that Defendant benefitted through an additional $55,000 in fraudulent proceeds used to pay his personal credit cards and to make payments on cars that he leased; and bank records and handwriting evidence showing that, on July 28, 2004 (one day after the search warrant was executed), Defendant deposited over $11,000 in fraudulent checks made payable to IPS into one of IPS's bank accounts.

In light of the substantial countervailing testimonial and documentary evidence, the email would not have cast "the whole case in such a different light as to undermine confidence in the verdict." Jardine, 658 F.3d at 776-77 (internal quotation marks and citation omitted). Accordingly, Defendant's motion is denied.

### III. CONCLUSION

Given the overwhelming evidence against him, Defendant's arguments that the undisclosed emails undermined confidence in his guilty verdict are meritless. See United States v. Agurs, 427 U.S. 97, 109-10 (1976) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."). The government's inadvertent failure to disclose the emails does not amount to a Brady violation. For the foregoing reasons, Defendant's motion for a new trial is denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge

United States District Court

DATED: August 23, 2012